In re AERO SERVICES, Inc.
No. 44420.

District Court, S. D. California,
Central Division.

Dec. 31, 1947.

Harold W. Kennedy, County Counsel, and Andrew O. Porter, Deputy County Counsel, both of Los Angeles, Cal., for John R. Quinn, County Assessor, and H. L. Byram, County Tax Collector.

Hugo A. Steinmeyer and John E. Walter, both of Los Angeles, Cal., for Bank of America.

Francis Cobb (of Cobb & Utley), of Los Angeles, Cal., for debtor.

J. F. T. O'CONNOR, District Judge.

The above entitled matter was before this court on a prior hearing. At that time the County Assessor, John R. Quinn, and H. L. Byram, the County Tax Collector, of Los Angeles County, filed petitions for a Writ of Prohibition praying that same be directed to the Honorable Benno M. Brink, Referee in Bankruptcy, prohibiting him from proceeding to re-determine, amend, or alter the assessed valuation of the property of the Aero Services Inc., a California corporation, the debtor corporation, as fixed by the County Assessor; and prohibiting him from otherwise proceeding in excess of his jurisdiction in the matter of said tax claim.

On January 16, 1947, the Referee announced his conclusion that he had jurisdiction, overruled the objection to the jurisdiction, but refused to make an Order from which an appeal would lie, and continued the matter to February 24 for the taking of testimony. The petitioners alleged that unless the Honorable Benno M. Brink is restrained, he will take testimony and re-determine the assessed valuation of said property.

The Referee overruled the objection to the jurisdiction.

This Court, on May 21, 1947, concluded as follows: "It is the opinion of the court that the Referee Benno M. Brink, should enter a written Order, either sustaining or denying jurisdiction, and that after the entry of said Order, either party may appeal."

On September 8, 1947, Benno M. Brink, Referee in Bankruptcy, filed in this court, pursuant to said direction, Findings of Fact and Conclusions of Law. Finding of Fact IX was as follows: "That said debtor owned and had control on the first Monday in March, 1946, of all the personal property listed in the declaration made in its behalf by V. W. Nelson, auditor, and assessed by the County Assessor; that the sole question before this court is the determination of the

value of such property for county tax purposes on the first Monday in March, 1946;"

The Referee's Conclusions of Law were as follows: "That, at the time the aforesaid petition under Chapter Eleven of the Bankruptcy Act was filed in this proceeding, the assessment for County tax purposes on the personal property here involved had not become final, and that, if the said petition had not been filed, the debtor corporation could have applied to the Board of Supervisors of Los Angeles County, sitting as a Board of Equalization, for an equalization or reduction of said assessment, and that, accordingly, this Court, ever since the filing herein of the said petition under Chapter Eleven of the Bankruptcy Act, has had and still has exclusive jurisdiction under section 64, sub. a (4) and section 311 of the Bankruptcy Act [11 U.S.C.A. § 104, sub. a (4), 711] to determine the value of the said personal property for County tax purposes."

The Court has examined the file and concludes as follows:

On the first Monday in March, 1946, the debtor herein was the owner of certain real and personal property. On May 14, 1946, a declaration for county tax purposes was made and verified on behalf of the debtor by one V. W. Nelson, its auditor, and the same was thereupon filed with the County Assessor; said statement shows that the value of the debtor's personal property was $355,710 as of the first Monday in March, 1946. Thereafter, on an undisclosed date, the County Assessor valued the said personal property for county tax purposes at said sum of $355,710.

On June 3, 1946, the debtor commenced this proceeding by filing herein its petition under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., and, on the same date, appropriate orders were made herein permitting it to remain in possession of its assets and to continue the operation of its business under the control of this Court. The said petition under Chapter XI of the Bankruptcy Act is still pending, but no order has thus far been entered confirming the debtor's plan of arrangement with its creditors. The debtor still continues in possession of its assets, but all of its business operations have been suspended.

In the latter part of 1946, the debtor received from the County Tax Collector a tax bill covering the taxes on its real and personal property as of the first Monday in March, 1946. Said taxes became a lien on the real property of the debtor as of such first Monday in March. The said tax bill shows the assessed value of the personal property of the debtor to be the aforesaid sum of $355,710 and that the amount of the tax thereon is the sum of $22,333.25.

On December 6, 1946, the debtor filed herein its petition for an order to show cause requiring the County Assessor and the County Tax Collector to show cause why the Referee should not determine the amount of taxes due by it to the County of Los Angeles and why the Referee should not direct the debtor as to the manner and time of payment of such taxes. An order to show cause being issued on the said petition, the Assessor and the Tax Collector, in due course, filed their answer thereto and also their objections to the jurisdiction of the Referee to proceed in the premises.

After a hearing the Referee made an oral ruling overruling the objections to the jurisdiction and directing that the hearing proceed on the merits.

Thereupon a Motion for Permission to File Petition for Writ of Prohibition was filed by the claimant and upon the hearing thereon an Order was made on May 21, 1947, directing the Referee to enter a written order upon his said determination on the jurisdictional controversy. Such an order was made on September 8, 1947, and thereafter this matter came before this Court upon the Petition for Review by the County Assessor and County Tax Collector.

The debtor's original Order to Show Cause to determine the amount of taxes due the County of Los Angeles still pends before the Referee awaiting the determination there of the power, right, and jurisdiction of the Referee to ascertain and determine the tax in question.

The tax in question was an obligation of the debtor as of a date prior to the filing of the Chapter XI proceedings. It was not an obligation within the classification of administration expenses since it

arose on the first Monday of March, 1946, and prior to the proceeding under Chapter XI, and in so far as we are here concerned, the claimant was a creditor with a provable claim in bankruptcy proceedings. This was not a claim coming into being as a result of the operation of a business by a receiver, trustee, or as here, the debtor in possession. Boteler v. Ingals, 308 U.S. 57, 60 S.Ct. 29, 84 L.Ed. 78.

The question to be answered is: "Does the Referee have jurisdiction to pass upon the amount of tax claim which the debtor maintains is grossly excessive?"

Section 64, sub. a(4) of the Bankruptcy Act provides: " * * * in case any question arises as to the amount or legality of any taxes, such question shall be heard and determined by the court."

Following the amendment to the Bankruptcy Act, Chandler Act effective September 22, 1938, the tax agencies were placed upon the same general basis as all other claims. The taxing agencies were required to file their claims in the manner of and within the time fixed for other claims. Prior to the said amendment, the Referee in ordering the disbursement of the funds of the bankruptcy estate was admonished by the prior Section 64, sub. a as follows: "The court shall order the trustee to pay all taxes legally due and owing by the bankrupt * * *."

and under this statute the law as developed by many cases uniformly held that the bankruptcy court had not only the duty but also the power and jurisdiction to hear and determine the matter of the amount of tax "legally due". In fact, the bankruptcy services and text books treated the subject as a settled condition of the law of bankruptcy distribution, and we observe that many of the state taxing statutes were cast with this power of the bankruptcy court in contemplation. For example, Section 18649, California State Personal Income Tax provides: "Upon bankruptcy * * * any deficiency * * * may be immediately assessed." and Section 18651: "Claims for deficiency * * * may be presented, for adjudication in accordance with the law, to the court before which the bankruptcy * * * is pending, despite the pendency of proceed-

ings for the redetermination of the deficiency pursuant to a petition to the board. No petitions for redetermination may be filed with the board after the adjudication of the bankruptcy * * *." Approximately the same language appears in Section 19(i) of the State Corporation Income Tax Act and under the State Bank and Corporation Franchise Tax Act, Gen.Laws Acts 8488, 8494a.

Section 25(i). "Upon the adjudication of bankruptcy of any taxpayer in any bankruptcy proceeding * * * any deficiency * * * determined by the commissioner * * * may be immediately assessed * * * claims for deficiency * * * may be presented, for adjudication in accordance with law, to the court before which the bankruptcy * * * is pending, despite the pendency of proceedings for the redetermination of the deficiency in pursuance of a petition to the State Board of Equalization but no petition for any such redetermination shall be filed with said board after the adjudication of bankruptcy."

Some reported cases went so far as to indicate that the bankruptcy court could redetermine the question as to the amount and legality of the tax *after the same had been passed upon by the state tax board or agency*. See numerous cases cited in Vol. 3, Colliers on Bankruptcy, 14 Ed. page 2146-7, note 13. But the rule was otherwise where the determination had been made by *a state or federal court*. Page 2149, note 19.

The indicated power being apparently superior to the ancient doctrine of the invulnerability of the principle of res adjudicata.

This questionable extension no doubt prompted two recent Supreme Court decisions. Arkansas Corporation Commission v. Thompson, 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244, and Gardner v. New Jersey, 328 U.S. 850, 66 S.Ct. 1123, 90 L.Ed. 1623; Id., 3 Cir., 152 F.2d 408; Id., 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. —.

Prior thereto the Supreme Court had supported the doctrine announced many times by the majority of the Circuit Courts that the bankruptcy court had the power to fix and determine the amount and legality of tax claims. New Jersey v. Anderson, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284.

350

The case of In the Matter of Gustav Schaefer Co., Bankrupt, 6 Cir., 103 F.2d 237, 241, (Certiorari denied Wells v. Boyle, 308 U.S. 579, 60 S.Ct. 96, 84 L.Ed. 485) 6th Circuit, was determined prior to the first Supreme Court case of Arkansas Corporation Commission v. Thompson supra. In speaking of the power of the bankruptcy court to pass upon the matter of taxes (Sec. 64, sub. a "* * * in case any question arises as to the amount or legality of any taxes, such question shall be heard and determined by the court * * *"):

"The economic justification of the statute and its validity is fully set out and sustained in the following cases: Whitney v. Dresser, 200 U.S. 532, 536, 26 S.Ct. 316, 50 L.Ed. 584; New Jersey v. Anderson, 203 U.S. 483, 495, 27 S.Ct. 137, 51 L.Ed. 284; Van Huffel v. Harkelrode, Treas., 284 U.S. 225, 231, 52 S.Ct. 115, 76 L.Ed. 256, 78 A. L.R. 453; Truman v. Thalheimer, 9 Cir., 19 F.2d 468; In re De Angeles, 10 Cir., 36 F.2d 218; Henderson County v. Wilkins, 4 Cir., 43 F.2d 670; In re Clayton Magazines, 2 Cir., 77 F.2d 852; City of Springfield v. Hotel Charles Co., 1 Cir., 84 F.2d 589; Dickinson v. Riley, 8 Cir., 86 F.2d 385; Board of Directors St. Francis Levee Dist. v. Kurn, 8 Cir., 91 F.2d 118; In re Lang Body Co., 6 Cir., 92 F.2d 338."

Likewise the 9th Circuit in the case of United States v. Coast Wineries, Inc., 9 Cir., 131 F.2d 643, 648, determined: "The jurisdiction of the bankruptcy court over the subject matter of taxes is specifically granted by the Bankruptcy Act, § 64, sub. a, as amended, 44 Stat. 662, 666, 11 U.S.C.A. § 104, sub. a, which, among other things, provides that 'The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States'. This language necessarily implies that in controverted matters the court must judicially determine the amount of the tax due." See 8 C.J.S., Bankruptcy (Referees), § 268 et seq. In re De Angeles, 10 Cir., 36 F.2d 218.

However, applying the doctrine of the said two recent Supreme Court cases solely to the factual situations therein, we find that the distinction rests upon the doctrine of res adjudicata in that the Supreme Court determined that the two agencies fixing the taxes were quasi-judicial bodies and that the proper respect and sanction should be accorded their determinations. On both occasions the court pointed out that the bodies were not ministerial but were quasi-judicial with a noticed hearing, production of witnesses prior to ascertainment of the tax, the right of review and appeal, etc. And as to its former decision of New Jersey v. Anderson, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284, Justice Black, for the court, said that where "A state agency, without a hearing, imposed a tax * * * we do not think it was the intention of Congress to conclude the bankruptcy courts by the findings of boards of this character * * *. The Arkansas Corporation Commission, however, does not act ministerially. On the contrary, it is a quasi-judicial agency entrusted with wide responsibilities * * *." [313 U.S. 132, 61 S.Ct. 892]

Following the decision in the Arkansas case, it is interesting to observe the impression which was made upon the lower Federal Courts.

Middelkamp v. Lea Trust (In re Ingersoll Co.), 10 Cir., 148 F.2d 282, determined that where taxes had been assessed no effort had been made in the manner and within the time prescribed by state law for correction of errors or inequalities in valuation of the property and the assessment had become final, the taxes were then legally due and owing within the meaning of Section 64, sub. a of the Bankruptcy Act and the provisions of said section did not authorize or empower the bankruptcy court to revise and redetermine in respect of valuation an assessment made under warrant of state law.

In the case of Baumann v. Sheehan, 8 Cir., 140 F.2d 747, 750, a determination was that the bankruptcy court had only that power which a state court had in equity to review the tax and that as a Missouri court would not have the power to review the tax neither would the court of bankruptcy. "If the rule were otherwise, it would make the bankruptcy court a 'super-assessment tribunal' over the state taxing agencies, which broad power was not intended to be conferred by Congress. Arkansas Corporation Commission v. Thompson, supra."

Commonwealth of Pennsylvania v. Aylward, 8 Cir., 154 F.2d 714, 716: "At the time the claim was considered by the Bankruptcy Court the assessments had become final, and so far as the Pennsylvania law is concerned they were legally due and owing. The provision in Section 64, sub. a, supra, does not authorize or empower the Bankruptcy Court to revise and redetermine in respect to valuation an assessment made pursuant to state law. * * * The taxpayer, having failed to seek relief in the administrative or quasi-judicial tribunals of Pennsylvania and the remedies they afford, can not, we think, seek the aid of the Bankruptcy Court under the provisions of Section 64, sub. a of the Bankruptcy Act."

On the other hand, other circuits have taken the pronouncements of the Arkansas and Gardner cases only in their most direct application to the respective factual conditions therein contained and have called attention to what may be a much narrower application, that is the lack of power and jurisdiction in the bankruptcy court to question the amount or legality of those taxes which have been theretofore ascertained by a quasi-judicial body at a quasi-judicial hearing. In other words the application of res adjudicata was resorted to and a second hearing was prohibited. The enunciation of this doctrine was no doubt salutary and much to be desired. The prohibition of rehearing, re-examination, etc. was quite proper in an orderly judicial process where the issue had been ascertained by a proper body or agency having the power to hold hearings on notice, require the production of witnesses and the power to make ultimate findings and order on the tax, subject only to the right of appeal, and thus bind all parties.

The minimum requirement apparently would be a determination by a quasi-judicial body in conjunction with a quasi-judicial hearing, or at least the right to such hearing.

The Second Circuit in a well-reasoned case, Lyford v. State of New York, 2 Cir., 137 F.2d 782, 784, discusses its view of the condition of the law following the Supreme Court's decision in the Arkansas case:

"Prior to the decision of Arkansas Corporation Commission v. Thompson, 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244, the great majority of the decisions had upheld a wide power in the bankruptcy court to review and redetermine local taxes under § 64, sub. a or its predecessor. These cases relied in substance upon State of New Jersey v. Anderson, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284, where such a redetermination by the bankruptcy court of a New Jersey tax had been upheld. See 3 Collier, op.cit. supra, pp. 2145, 2146, and citations; and cf. Dickinson v. Riley, 8 Cir., 86 F.2d 385; In re General Film Corp., 2 Cir., 274 F. 903; In re Clayton Magazines, Inc., 2 Cir., 77 F.2d 852. There had been, however, a minority view, of which perhaps the leading examples were In re Gould Mfg. Co., D.C., E.D.Wis., 11 F.Supp. 644 (noted with approval in 45 Yale L.J. 734), and In re 168 Adams Bldg. Corp., 7 Cir., 105 F.2d 704, certiorari denied Steinbrecher v. Toman, 308 U.S. 623, 60 S.Ct. 378, 84 L.Ed. 520. See, also, 50 Yale L.J. 165, stating the arguments against restriction of the state's taxing rights in criticism of In re Missouri Pac. R. Co., D.C.,E.D.Mo., 33 F.Supp. 728, which was later affirmed, Arkansas Corporation Commission v. Thompson, 8 Cir., 116 F.2d 179, but was reversed by the Supreme Court in the case first cited. There is no doubt but that the Supreme Court's decision renders many at least of the earlier cases no longer valid precedents, or that it considerably restricts interference by the bankruptcy court with state-taxing powers. * * *

"There were two major questions before the Supreme Court in that case: first, whether § 64, sub. a applies in railroad reorganization proceedings, and second, *whether if applicable it allowed redetermination of a tax finally settled by state authorities.* The first was expressly left undecided by the Court. * * *

"Our present problem, however, is not the determination of priorities, but merely the extent of power of the bankruptcy court to decide upon tax claims. * * * On the other hand, the effect of the Thompson case is, in any event, to restrict the court to finding if the tax is legally due and to deny it power to review the action of a quasi-

judicial taxing body in setting, after due hearing, a valuation of property for tax purposes. We conclude, therefore, that the court below did have power to decide whether the claimed tax was 'legally due.'

"There still remains the major question of the extent of that power as applied to the present circumstances. And here what seem the probable limitations of the Thompson case, as ably pointed out by Professor Moore, 3 Collier, op. cit. supra, pp. 2164-2167, become important. In that case the Court distinguishes the Anderson case, because in the latter the New Jersey tax assessors acted only in a ministerial capacity, while the Arkansas Commission acted in a quasi-judicial capacity and had finally settled the tax upon the participation of the trustee, who then did not take the appeal provided by the state law. Hence in the Thompson case the assessment of the tax had become res adjudicata by virtue of the state proceedings when the bankruptcy court assumed the power to consider it. Moreover, the question involved was that of valuation of the property of the railroad in the state—a matter the courts generally would not review on appeals from administrative bodies and which the Court concluded Congress did not intend should be reviewed in bankruptcy. In other words, the decision concerns a tax finally settled without appeal by the state authorities and an attack not on issues of legality, but on issues of valuation. Review in such a case involves the upsetting of state-taxing activities in ways beyond that permitted as to administrative action generally, as had been pointed out by commentators and as was held by the Supreme Court".

The Third Circuit in the case entitled In re Monongahela Rye Liquors, Inc., 3 Cir., 141 F.2d 864, 866 in 1944, in referring to the amendment of Section 64, sub. a by the Chandler Act states:

"The Chandler Act, to which the instant case is subject, not only appears not to have taken away or restricted whatever may have been a bankruptcy court's jurisdiction to redetermine tax claims but, on the contrary, seems to indicate more clearly the existence of the power. * * *

"Generally speaking, therefore, we think that a bankruptcy court has the power to re-determine tax claims in the exercise of its jurisdiction under the Chandler Act. But we also think that certain factual determinations in respect of such claims, when competently made in another forum, may be conclusive at a hearing thereon in a bankruptcy court. Such we believe is indicated by a comparative reading of the decisions in New Jersey v. Anderson, and Arkansas Corporation Commission v. Thompson, supra. * * *

"The view we take of the decision in the Thompson case is that where, after a hearing, a quasi-judicial body, thereunto duly empowered, determines the amount of a tax due, with the right on the part of the taxpayer to a judicial review of the determination, all conformable with the requirements of due process, such determination, upon becoming final by operation of law, is conclusive upon a court of bankruptcy save for mathematical error in the computation of the amount of the tax or legal error in its assessment. Cf. In re 168 Adams Building Corporation, D.C., 27 F.Supp. 247, 249, 250, affirmed sub nom. Steinbrecher v. Toman, 7 Cir., 105 F.2d 704, certiorari denied 308 U.S. 623, 60 S.Ct. 378, 84 L.Ed. 520; In re Schach, D.C., 17 F.Supp. 437, 438, 439; In re Gould Mfg. Co., D.C., 11 F. Supp. 644, 649. In Lyford v. City of New York, 2 Cir., 137 F.2d 782, 786, the Court of Appeals for the Second Circuit said that ' * * * the effect of the Thompson case is, in any event, to restrict the court to finding if the tax is legally due and to deny it power to review the action of a quasi-judicial taxing body in setting, after due hearing, a valuation of property for tax purposes.' And, again, in Re Hotel Martin Co. of Utica, D.C., 41 F.Supp. 392, 394, it was said that 'The Arkansas case, supra, illustrates the law relative to real property assessments by state or local authorities where the review of the assessments as provided by law was not taken.'

"The question in any instance, therefore, is whether the circumstances necessary to justify an exercise of bankruptcy's power to redetermine a tax claim are present. We think they are in the instant case. The taxpayer having failed to file a return, the tax assessments against it were based upon estimated 'settlements' arbitrarily made by

the State's Department of Revenue without hearing the taxpayer."

In the instant case the time for objection to the assessment before the Board of Equalization had not expired at the time of the within bankruptcy proceeding. There had been no hearing, finding or final order on the tax at the time of bankruptcy and it therefore appears that the determination of the amount of tax may be had in those pending bankruptcy proceedings, and accordingly this Court determines that the objection to the jurisdiction should be overruled.

It is so ordered.